**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **BRYAN GORDON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **C.A. No. 09-230-S** |
| **v.** | ) | |
| | ) | |
| **CORPORATE RECEIVABLES, INC** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Bryan Gordon has moved for an order allowing this Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq., "FDCPA") action to proceed on behalf of a class against defendant Corporate Receivables, Inc. ("CR")  The class consists of: (a) all natural persons with addresses in Rhode Island, Massachusetts, Maine, New Hampshire or Puerto Rico (b) to whom defendant sent a letter in the form represented by Exhibit A attached to the Class Action Complaint, (c) which letter was sent  on or after a date one year prior to the filing of this action,  (d) and was not returned by the postal service.

I.      **NATURE OF THE CASE**

The Class Action Complaint, which attaches CR's form collection letter as Exhibit A, alleges that such letter violate the FDCPA because it states that "unless you notify this office in writing within thirty days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid".  In fact,  15 U.S.C. §1692g does not require that the consumer's dispute of the debt be "in writing."  Plaintiff therefore submits that CR's notice violates the FDCPA.

1

## II.     THE FAIR DEBT COLLECTION PRACTICES ACT

Congress passed the FDCPA to combat the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors ... [that] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692.   In enacting the FDCPA, Congress recognized the  --

> ...universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is miniscule [sic]. . . .   [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The FDCPA imposes strict liability on debt collectors for their unfair practices in making false or misleading representations.  15 U.S.C. §§ 1692a-1692j.  *See* Som v. Daniels Law Offices, P.C., 573 F.Supp.2d 349, 355 (D.Mass. 2008); Harrington v. CACV of Colorado, LLC, 508 F.Supp.2d 128, 132 (D.Mass. 2007).   Because it is a "strict liability statute," proof of one violation is "sufficient to support summary judgment for the plaintiff."  Cacace v. Lucas, 775 F.Supp. 502, 505 (D.Conn. 1990).

A plaintiff need not show intentional conduct by the collector or actual damages to establish a prima facie case.  *See* Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331 *3, (D.Mass.2005).   "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled."  Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D.Del. 1991)  If so, automatic statutory damages are recoverable, whether or not the consumer proves actual damages.  Savino v. Computer Credit, Inc., 164 F.3d

81, 87 (2d Cir. 1998)("All that is required for an award of statutory damages is proof that the statute was violated").  *Accord,* Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997); Woolfolk v. Van Ru Credit Corp., 783 F.Supp. 724, 727 and n. 3 (D.Conn. 1990); Cacace v. Lucas, 775 F.Supp. 502 (D.Conn. 1990); Riveria v. MAB Collections, Inc., 682 F.Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F.Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA is liberally construed in favor of the consumer to effectuate its purposes.  Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D.Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  Baker v. G.C. Services Corp., 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F.Supp. 1204, 1206 (N.D.Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers . . . ."  FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ."  Pipiles v. Credit Bureau of Lockport,

<u>Inc.</u>, 886 F.2d 22, 27 (2d Cir. 1989).

The relevant portion of the FDCPA states that:

§ 1692g.        Validation of debts [Section 809 of P.L.]
                        Notice of debt; contents
(a) Within five days after the initial communication with a consumer in
connection with the collection of any debt, a debt collector shall, unless the
following information is contained in the initial communication or the consumer
has paid the debt, send the consumer a written notice containing--
                (1)     the amount of the debt;
                (2)     the name of the creditor to whom the debt is owed;
                (3)     a statement that unless the consumer, within thirty days after
                receipt of the notice, disputes the validity of the debt, or any portion
                thereof, the debt will be assumed to be valid by the debt collector;
                (4)     a statement that if the consumer notifies the debt collector in
                writing within the thirty-day period that the debt, or any portion thereof, is
                disputed, the debt collector will obtain verification of the debt or a copy of
                a judgment against the consumer and a copy of such verification or
                judgment will be mailed to the consumer by the debt collector; and
                (5)     a statement that, upon the consumer's written request within the
                thirty-day period, the debt collector will provide the consumer with the
                name and address of the original creditor, if different from the current
                creditor.
                        Disputed debts
(b) If the consumer notifies the debt collector in writing within the thirty-day
period described in subsection (a) of this section that the debt, or any portion
thereof, is disputed, or that the consumer requests the name and address of the
original creditor, the debt collector shall cease collection of the debt, or any
disputed portion thereof, until the debt collector obtains verification of the debt or
a copy of a judgment, or the name and address of the original creditor, and a copy
of such verification or judgment, or name and address of the original creditor, is
mailed to the consumer by the debt collector.
                        Admission of liability
(c) The failure of a consumer to dispute the validity of a debt under this section
may not be construed by any court as an admission of liability by the consumer.

The statement by CR in Exhibit A that a consumer must dispute the validity of a debt "in

writing" is contrary to the express language of §1692g(a)(3).  Only subsections §1692g(a)(4) and

(5) contain the "in writing" requirement, which in turn triggers obligations on the part of the debt

collector to provide verification of the debt, judgment and/or original creditor.

4

The Ninth Circuit has explicitly held that proper statutory construction inevitably leads to the conclusion that a debt collector's letter violates the FDCPA if it states that disputes regarding the validity of debts must be in writing.  In Camacho v. Bridgeport Fin., Inc., 430 F.3d 1078, 1080 (9th Cir.2005), it stated that "we must give effect to the plain meaning of the statute." Similarly, in Brady v. Credit Recovery Co., Inc., 160 F.3d 64 (1st Cir.1998), the First Circuit held that "[t]he fact that other sections of the FDCPA--like § 1692g(b)--explicitly impose a writing requirement suggests that Congress's omission of such a requirement in § 1692e(8) was not inadvertent." Id. at 66-67. *But see*, Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991)(holding that a § 1692g(a)(3) notice should be in writing).

CR, which operates out of the Ninth Circuit, violated the FDCPA by including language requiring a consumer to dispute the validity of their debt "in writing".  Since CR has failed to timely answer or otherwise respond to the Complaint properly served upon it, no affirmative defenses have been raised.

## III.   <u>STANDARD FOR CLASS CERTIFICATION</u>

Class actions are essential to enforce laws protecting consumers.  Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases.  As a result, numerous FDCPA class actions have been certified.  Avila v. Van Ru Credit Corp., 1995 U.S. Dist. LEXIS 461 (N.D.Ill. 1995), *aff'd* Avila v. Rubin, 84 F.3d 222, 1996 U.S.App.LEXIS 11415 (7th Cir. 1996); Carr v. Trans Union Corp., 1995 U.S.Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., 1995 U.S.Dist. LEXIS 578 (E.D.Pa.

1995)(same); <u>Gammon v. GC Services, LP</u>, 162 F.R.D. 313 (N.D.Ill. 1995) (similar); <u>Zanni v.</u>

<u>Lippold</u>, 119 F.R.D. 32, 35 (C.D.Ill. 1988); <u>West v. Costen</u>, 558 F.Supp. 564, 572-573 (W.D.Va.

1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices

and addition of unauthorized fees); <u>Cheqnet Systems, Inc. v. Montgomery</u>, 322 Ark. 742, 911

S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); <u>Wilborn v.</u>

<u>Dun & Bradstreet</u>, 180 F.R.D. 347 (N.D.Ill. 1998); <u>Davis v. Suran</u>, 1998 U.S. Dist. LEXIS 12233

(N.D.Ill. July 31, 1998); <u>Francisco v. Doctors & Merchants Credit Service, Inc.</u>, 1998 U.S.Dist.

LEXIS 12234 (N.D.Ill., July 29, 1998); <u>Miller v. Wexler & Wexler</u>, 1998 U.S. Dist. LEXIS 1382

(N.D.Ill. 1998) (letters demanding unauthorized charges).  "Because these are small-stakes cases,

a class suit is the best, and perhaps the only, way to proceed." <u>Crawford v. Equifax Payment</u>

<u>Services, Inc.</u>, 201 F.3d 877, 880 (7th Cir. 2000).

## IV.     THE PROPOSED CLASS MEETS
##         THE REQUIREMENTS FOR CERTIFICATION.

### A.     Rule 23(a)(1)  --  Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members

is impracticable."  Where the class numbers at least 40, joinder is generally considered

impracticable.  <u>Marcera v. Chinlund</u>, 595 F.2d 1231, 1238 (2d Cir. 1979), vacated on other

grounds, 442 U.S. 915 (1979)(holding that there is "little doubt" that 42 individuals satisfied

numerosity); <u>Cypress v. Newport News General & Nonsectarian Hosp. Ass'n</u>, 375 F.2d 648, 653

(4th Cir. 1967) (18 sufficient); <u>Swanson v. American Consumer Industries</u>, 415 F.2d 1326, 1333

(7th Cir. 1969) (40 sufficient); <u>Town of New Castle v. Yonkers Contracting Company, Inc.</u>, 131

F.R.D. 38, 40 (S.D.N.Y. 1990);  <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60 (N.D.Ill. 1986) (10-29

sufficient); <u>Philadelphia Electric Co. v. Anaconda American Brass Co.</u>, 43 F.R.D. 452, 463

(E.D.Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.Pa.

1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D.Ill.

1992) (about 70).  It is not necessary that the precise number of class members be known.  "A

class action may proceed upon estimates as to the size of the proposed class." In re Alcoholic

Beverages Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982); Lewis v. Gross, 663 F.Supp. 1164, 1169

(E.D.N.Y. 1986).  "When the class is large, numbers alone are dispositive . . . ." Riordan v. Smith

Barney, 113 F.R.D. 60, 62 (N.D.Ill. 1986).

Here, it appears that CR has blocked the ability of Plaintiff to pull a current Dun &

Bradstreet report online.  However, this Court can take judicial notice of the fact that in 2003,

CR employed 85 persons and had revenues of $9 million per year.  Ingram v. Corporate

Receivables, Inc., 2003 WL 21982152 * 3(N.D.Ill. 2003).  These facts enabled the Northern

District of Illinois to extrapolate that the form letters of which plaintiff complained would have

been sent to at least 40 other similarly situated persons within the defined class in the relevant

time period and therefore the numerosity requirement had been meet.[1]

Without discovery, it is difficult to ascertain exactly how much CR, a privately held

company,  has grown in the past six years.  However, it appears to now have three locations in the

greater Phoenix area, is constantly recruiting for collectors in the major job markets and is current

---

[1]  The Ingraham court cited to several other cases which used such extrapolations in
meeting the numerosity threshold, including Davis v. Suran, No. 98 C 0656, 1998 WL 474105, at
*2 (N.D.Ill. Aug. 3, 1998) (using a defendant's 10-K Form to determine the size of the company
and the approximate frequency of transactions at issue); Sledge v. Sands, 182 F.R.D. 255, 258
(N.D.Ill.1998) (considering the agency's size in determining the frequency with which letters
would be sent); Carr v. Transunion Corp., C.A. 94-22, 1995 WL 20865 at *1 (E.D.Pa. Jan. 12,
1995) (inferring numerosity from the use of form collection letters).

on all its corporate filings with the Arizona Secretary of State.  There is no reason to believe that

CR has gotten any smaller, especially in the deteriorating economy.  *See,* "One industry that's

booming: Debt Collection."  Buffalo News, October 25, 2009.[2]   However, the Court can

certainly reasonably extrapolate that at least 40 form letters such as the one sent to Plaintiff were

sent by CR to other class members in the one year before the case was filed.

### B.      Rule 23(a)(2)  --  Commonality

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Not all

factual or legal questions raised in the litigation need be identical. *See* <u>United States v. Rhode</u>

<u>Island Dept. of Employment Sec.</u>, 619 F. Supp. 509, 513 (D.R.I. 1985)(holding that "to require

complete identity would unduly confine class actions to the narrowest circumstances");   <u>Mack v.</u>

<u>Suffolk County</u>, 191 F.R.D. 16, 23 (D. Mass. 2000)("All of these differences between the

proposed class members, while arguably relevant as defenses to liability, do not change the fact

that this class action raises the same basic claim and shares common questions of law."); <u>Mulligan</u>

<u>v. Choice Mortg. Corp.USA,</u> 1998 U.S. Dist. LEXIS 13248, *7 (D. N.H.  Aug. 11,

1998)(commonality is ordinarily easily satisfied).  Where a question of law involves "standardized

conduct of the defendants toward members of the proposed class, a common nucleus of operative

facts is typically presented, and the commonality requirement . . . is usually met." <u>Franklin v. City</u>

<u>of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>Patrykus v. Gomilla</u>, 121 F.R.D. 357, 361

(N.D.Ill. 1988).

In the present case, common questions of law and fact clearly predominate over individual

_____

[2]  http://www.buffalonews.com/145/story/838913.html (Last accessed November 5,
2009).

8

concerns.  Plaintiff's claim turns on whether the form notice complied with the requirements of 15 U.S.C. §1692g.  The only individual issue is the identification of the persons who received the offending notices, a matter capable of ministerial determination from defendant's records. Questions readily answerable from defendant's files do not present an obstacle to class certification. As noted above, there are no issues of reliance or causation.

**C.     Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> This requirement has been deemed satisfied when the claims of the representatives and other class members are based on the same legal or remedial theory and there are no antagonistic interests between the two groups. There has been general agreement that the existence of varying fact patterns to support the claims of individual class members does not mandate the finding of lack of typicality, as long as the claims arise out of the same legal or remedial theory.

In re Alcoholic Beverages Litigation, 95 F.R.D. 321, 324 (E.D.N.Y. 1982)(citations omitted); Open Housing Center, Inc. v. Samson Management Corp., 152 F.R.D. 472, 478 (S.D.N.Y. 1993); see also De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983); see also Guckenberger v. Boston University, 957 Supp. 306, 325 (D. Mass. 1997)(certifying class of disabled plaintiffs challenging school's blanket accommodations policy although plaintiffs suffered from various disabilities).

In the instant case, typicality is inherent in the class definition.  By definition, each of the class members has received a deficient notice under exactly the same circumstances that the plaintiff received the deficient notice.   All class members' claims arise from the same practice of defendant which gave rise to the named plaintiff's claim.

**D.**     **Rule 23(a)(4) -- Adequacy of Representation**

        The rule also requires that the named plaintiff provide fair and adequate protection for the

interests of the class.  That protection involves two factors:  (a) the plaintiff's attorney must be

qualified, experienced, and generally able to vigorously conduct the proposed litigation; and (b)

the plaintiff must not have interests antagonistic to those of the class.  Andrews v. Bechtel Power

Corp., 780 F.2d 124, 130 (1st Cir. 1985); Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.

1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re

Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982).

        Plaintiff understands his obligation as class representative, and has retained experienced

counsel, as is indicated by the Affidavit of Christopher M. Lefebvre filed simultaneously

herewith, which sets forth counsel's qualifications.

        The second relevant consideration under Rule 23(a)(4) is whether the interests of the

named plaintiff is coincident with the general interests of the class.  Here, both plaintiff and the

class members seek money damages as the result of defendant's unlawful collection notice.

Given the identity of claims between the plaintiff and the class members, there is no potential for

conflicting interests in this action.  There is no antagonism between the interests of the named

plaintiff and those of the class.

**E.**     **Rule 23(b)(3) --  Common**
        **Questions of Law or Fact Predominate**

Rule 23(b)(3) requires that the questions of law or fact common to all members of the

class predominate over questions pertaining to individual members.  Mulligan v. Choice Mortg.

Corp.USA, 1998 U.S. Dist. LEXIS 13248, *7 (D. N.H.  Aug. 11, 1998).  This criterion is

normally satisfied when the "common nucleus of operative facts forms the central issue in the

10

case..." <u>Dornberger v. Metropolitan Life Insurance Co.</u>, 182 F.R.D. 72, 77 (S.D.N.Y. 1998).  The common issues are predominate when the class shares issues of "overriding significance," such as a determination of defendant's liability, and separate adjudication of individual liability claims would be unnecessary. <u>Mulligan</u>, 1998 U.S. Dist. LEXIS 13248, at *13; <u>see</u> 7A Federal Practice and Procedure §§ 1778, at 534.

In this case, the only issue is that of defendant's liability for the form notices.  The dispositive issue  -- indeed, the <u>only</u> issue -- is whether defendant violated the rights of the plaintiff and the class members by sending such notices.

The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis.  <u>Bonilla v. Trebol Motors Corp.</u>, 1997 U.S. Dist. LEXIS 4370, at *324 n.9 (D.P.R. Mar. 27, 1997)(fraud allegations based on form motor vehicle contracts), <u>rev'd on other grounds</u>, 150 F.3d 62 (1st Cir. 1998); <u>Halverson v. Convenient Food Mart, Inc.</u>, <u>supra</u>; <u>Haroco v. American Nat'l Bank</u>, 121 F.R.D. 664, 669 (N.D.Ill. 1988)(improper computation of interest); <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 97 F.R.D. 683 (N.D.Ga. 1983)(same); <u>Heastie v. Community Bank</u>, 125 F.R.D. 669 (N.D.Ill. 1989)(execution of home improvement financing documents in sequence that evaded consumers' rescission rights).  This is true even though the nature and amount of damages may differ among the members of the class. <u>Heastie v. Community Bank</u>, <u>supra</u>.

The case at bar is especially appropriate for class action treatment because there are no individual questions relating to liability which cannot be determined by ministerial inspection of defendant's records.  Therefore, the common issues of law and fact clearly predominate.

11

**F.      Rule 23(b)(3)  --  Class Action Is Superior to Other Available
          Methods of Resolving This Controversy.**

        Efficiency is the primary focus in determining whether the class action is the superior

method for resolving the controversy presented.  Ruiz v. American Tobacco Co., 180 F.R.D. 194,

198 (D.P.R. 1998); Fulco v. Continental Cablevision, Inc., 1990 U.S. Dist. LEXIS 11393, at *11

(D. Mass. June 19, 1990).  The Court is required to determine the best available method for

resolving the controversy in keeping with judicial integrity, convenience, and economy.  It is

proper for a court, in deciding the "best" available method, to consider the "substantial economies

[that] would accrue by permitting the plaintiffs to resolve [their suit] as a class, in a single

proceeding [and not] in a series of individual suits. . .";  and, whether it would increase the

public's awareness of the suit and thereby increase the "number of individuals able to vindicate

their rights." In re State Police Litigation, 1998 U.S. Dist. LEXIS 2351, at *15-16 (D. Conn.

January 27, 1998).  It is also appropriate to consider the "inability of the poor or uninformed to

enforce their rights, and the improbability that large numbers of class members would possess the

initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161 (7th Cir.

1974).

        In this case there is no better method available for the adjudication of the claims which

might be brought by each individual debtor.  The vast majority of debtors are undoubtedly

unaware that their rights are being violated.  In addition, persons from whom defendant were

attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to

retain counsel to protect their rights on an individual basis.

        The special efficacy of the consumer class action has been noted by the courts.  See

12

Crawford, 201 F.3d at 880; Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); see

e.g. Fetta v. Sears, Roebuck & Co., 77 F.R.D. 411 (D. R.I. 1977).

> Where, as here, class members are likely to possess relatively small claims
> unworthy of individual adjudication due to the amount at issue in each one, the
> mechanism of the class action is deemed to be superior.

Dornberger v. Metropolitan Life Insurance Co., 182 F.R.D. 72, 83 (S.D.N.Y. 1998).  Another

court noted:

> Given the relatively small amount recoverable by each potential litigant, it is
> unlikely that, absent the class action mechanism, any one individual would pursue
> his claim, or even be able to retain an attorney willing to bring the action.  As
> Professors Wright, Miller and Kane have discussed, in analyzing consumer
> protection class actions such as the instant one, 'typically the individual claims are
> for small amounts, which means that the injured parties would not be able to bear
> the significant litigation expenses involved in suing a large corporation on an
> individual basis.  These financial barriers may be overcome by permitting the suit
> to be brought by one or more consumers on behalf of others who are similarly
> situated.'  7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v. Shutts,
> 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims
> which would be uneconomical to litigate individually.')  The public interest in
> seeing that the rights of consumers are vindicated favors the disposition of the
> instant claims in a class action form.

Lake v. First Nationwide Bank, 156 F.R.D. 615 at 628, 629 (E.D.Pa 1994).

## VI.   <u>CONCLUSION</u>

The proposed class meets the requirements of Rules 23(a) and (b)(3). Class certification will provide an efficient and appropriate resolution of the controversy.  Plaintiff respectfully requests that the Court certify this action as a class action.

**BRYAN GORDON,**
**By his Attorney,**

**/s/<u>Christopher M. Lefebvre</u>**
**# 4019**
**LAW OFFICES OF CLAUDE**
**LEFEBVRE & SONS**
**P.O. Box 479**
**Two Dexter Street**
**Pawtucket, RI  02862**
**(401) 728-6060**
**(401) 728-6534 (FAX)**
**chris@lefebvrelaw.com**

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BRYAN GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A.  09-0230-S |
| v. | ) | |
| | ) | |
| CORPORATE RECEIVABLES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATION

I hereby certify that this Memorandum in Support of Motion for Class Certification filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 9, 2009.


**/s/Christopher M. Lefebvre**


CORPORATE RECEIVABLES, INC.                    CORPORATE RECEIVABLES, INC.
Agent for Service of Process                          3003 North Central Avenue
National Registered Agents, Inc.                     Suite 320
222 Jefferson Blvd., Suite 200                        Phoenix, Arizona 85012
Warwick, RI 02888


S:\WPFILES\CLASSACT\Gordon v. Corporate Receivables\memorandum for class cert.wpd